**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

WILLIAM ROBERT FRALEY,

    Petitioner,

v.

CINDI CURTIN, Warden,

    Respondent.

_____/

Case No. 07-15103

Hon. John Corbett O'Meara
U.S. District Judge

# OPINION AND ORDER

Petitioner William Robert Fraley has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. A response was filed July 9, 2008. For the reasons set forth below, the Petition will be denied.

## I. PROCEDURAL HISTORY

Petitioner was found guilty by a jury in Livingston County Circuit Court in violation of first degree home invasion, in violation of Mich. Comp. Laws Ann. § 750. 110a(2). He was sentenced as a third-time felony offender pursuant to Mich. Comp. Laws Ann. § 769.11, to a term of 12 years and 8 months to 40 years on March 8, 2005. Petitioner filed an appeal of right to the Michigan Court of Appeals, which affirmed his conviction on April 24, 2007. The Michigan Supreme Court denied leave to appeal on April 24, 2007.

On November 27, 2007, Petitioner filed his petition for writ of habeas corpus raising the following issues: 1) whether petitioner's Sixth Amendment right to counsel was violated due to the jury selection method used; 2) whether petitioner's Sixth Amendment right to counsel was

violated due to counsel's failure to object to the jury instructions; 3) whether petitioner's Sixth Amendment right to counsel was violated due to a conflict of interest that adversely affected counsel's representation of him; and 4) whether petitioner's conviction of first degree home invasion must be reversed because of the prosecution's failure to present legally sufficient evidence that he had the intent to commit larceny.

## II. FACTS[1]

Following a jury trial, Petitioner and his co-defendant were convicted of first degree home invasion arising out of an incident at a residence in Livingston County. On August 25, 2004, Monica Adams was home alone on the computer around ten o'clock in the morning after her children had gone to school when she heard a car horn blowing. She saw a car and noticed two individuals inside the car blowing the horn. Not recognizing either car or the two male occupants, she stayed in her home and watched as the car left her driveway, went across the street, and drove into a field of trees into an area where she could no longer see the car. Adams described the area as an unusual one for cars to park.

Adams then saw the two men walk out of the field straight to her front door. The men rang the front doorbell at least four times, but Adams did not answer the door since she was suspicious and did not know the men. Adams identified both men as the defendants. After being at the door for maybe two minutes, the men then went to the back of the house and Adams called 911. Adams heard a door open and heard a door from the sunroom into the pantry pop open. A locked door separated the pantry from the kitchen and the rest of the interior rooms of the home, including bedrooms. The home contained jewelry and other items of value.

---

[1] The statement of facts is taken from the jury trial transcript of January 25, 2005.

On the phone with 911 while defendants were breaking into her house, Adams fled from her house through a patio door in her bedroom, onto a deck, and into the woods. Within ten minutes, police arrived. However, before the police arrived, she saw Defendants run around the side of her house back towards the car parked in the woods. Gerald Tater, a neighbor of Adams, saw Defendants' car come from the field and speed through his yard. While the car was fleeing, Tater noticed a light colored coat hanging out of the trunk, covering up the rear license plate. However, when Michigan State Police Trooper Frasier stopped Defendants' vehicle as he was responding to the scene, the license plate was no longer covered.

At trial, Adams testified that a locked door leading from the food pantry into the kitchen had scratch marks on it, and that she eventually found the handle of a brass candle snuffer that she normally kept on a table in the sunroom lying on boxes in the food pantry near the door. Other than the candle snuffer, nothing was missing.

Defendants were convicted as charged after a jury trial. Fraley, on parole for first-degree home invasion, was sentenced as a third habitual offender to serve a consecutive sentence of 12 years and 8 months to 40 years in the Department of Corrections.

## III. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this court's habeas corpus review of state court decisions. Specifically, 28 U.S.C. § 2254(d) provides:

> "(d)An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In <u>Williams v Taylor</u>, 529 U.S. 362 (2000), the United States Supreme Court held that in order to justify a grant of habeas corpus relief under the AEDPA, a federal court must find a violation of law clearly established by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state courts decision. Under subsection (d), habeas relief may not be granted unless (1) the state court decision was contrary to established federal law, or (2) the state court decision involved an unreasonable application of clearly established federal law. <u>Id</u>. at 412. <u>Williams</u> held that a state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this court has on a set of materially indistinguishable facts." <u>Id</u>. at 413. <u>Williams</u> further held that a state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this court's decisions but unreasonably applies that principle to the facts of a prisoner's case." <u>Id</u>.

More recently in <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005), the Supreme Court stated that a "state court decision involves an unreasonable application of this court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." <u>Williams</u> acknowledged the difficulty in defining the term "unreasonable," but explained that "it is a common term in the legal world and, accordingly, federal Judges are familiar with its meaning." <u>Id</u>. at 410. In <u>Harris v. Stovall</u>, 212 F.3d 940, 943

(6th cir 2000), the United States Court of Appeals for the Sixth Circuit held that it would rely solely on Williams for the appropriate standard under §2254(d).

## IV. ANALYSIS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

The Sixth Amendment guarantees the accused in criminal prosecution the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the court set forth a two-part test for determining whether a habeas petitioner received ineffective assistance of counsel. The first component of this two-part test requires the petitioner to show that counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed [to] the defendant by the Sixth Amendment.'' Id. at 688. To establish deficient performance under this prong of Strickland, the petitioner must show that his attorney's representation "fell below an objective standard of reasonableness." Id. at 688. The second component of the two-part test requires that the petitioner show that counsel's deficient performance prejudiced the defense. To meet the prejudice standard, a petitioner must show that there is a reasonable probability that, "but for" counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 688. Moreover, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690.

#### i. Conflict of Interest

A petitioner must show that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected counsel's performance. Mickens v. Taylor, 535

U.S. 162 (2002). This requires petitioner to point to specific instances in the record which suggest an actual conflict or impairment of his interests. Thomas v. Foltz, 818 F.2d 476, 481 (6th Cir.1987). If the conflict is of a matter that is irrelevant or the conflict is merely hypothetical, there is no constitutional violation. Moss v. United States, 323 F.3d 445, 463-64 (6th Cir. 2003). When such a conflict of interest exists that adversely impacts the sufficiency of an attorney's performance, prejudice is presumed. People v. Smith, 456 Mich. 543, 557 (1998).

In the present case, Fraley claims that an actual conflict of interest existed because defense counsel was to be paid directly by his co-defendant Snow's family. However, there is nothing in the record that supports the allegation that defense counsel was to be paid solely by Snow's family, failing to satisfy the rule established in Foltz. Petitioner also asserts that he was prejudiced because defense counsel failed to seek a cautionary instruction that Snow's testimonial statements could only be used against Snow and failed to question the arresting officer about any bias Snow might have had in making the statements.

Moreover, by electing to allow Snow's testimonial statements to be introduced as substantive evidence against both defendants, it allowed counsel to present a defense without subjecting either defendant to cross-examination. This court agrees with the State of Michigan Court of Appeals that the statements were not prejudicial, as it was a matter of reasonable trial strategy and consistent with counsel's defense theory.

The fact that counsel's strategy was ultimately unsuccessful does not conclude that counsel was ineffective. See Moss v. Hofbauer, 286 F.3d 851, 859 (6th Cir. 2002). In conclusion, Petitioner failed to meet the burden of establishing that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different.

####           ii.      Jury Selection Method

"The Sixth and Fourteenth Amendments guarantee a criminal defendant an impartial jury in state court." Mahdi v. Bagley, 522 F .3d 631, 636 (6th Cir.2008). The Sixth Amendment also grants to a defendant in a criminal trial a constitutional right to a jury drawn from a venire representative of a fair cross-section of the community in which the case is tried. The Michigan Supreme Court has recognized that a defendant is entitled to have the jury selected as provided by the prescribed rule. People v. Miller, 411 Mich. 321 (1981).

In Miller, the judge ordered that the struck jury method would be used to select the jury of 14. This process required that 80 prospective jurors be seated and examined. The struck jury method provided that after all challenges for cause were exercised, peremptory challenges would be exercised in rotation. The top 14 jurors in order of seating would be sworn as the jury for the trial. Id. at 336. The court in Miller held that the "struck jury method" or any system patterned thereafter is disapproved and may not be used in the future.

In the present case, Petitioner argues that his counsel was ineffective by agreeing to implicate the struck jury method. However, the struck jury method was never implicated here because each juror was replaced when removed; and defense counsel's peremptory challenges were not diluted as a result of the method used. In fact, defense counsel did not exhaust his peremptory challenges, having eight peremptory challenges remaining. Therefore, since the improper jury selection method was not used, counsel was not ineffective for failing to object.

####           iii.      Jury Instructions

The relevant question on habeas review of a jury instruction is whether the ailing instruction infected the entire trial to the extent that the resulting conviction violates due process. Cupp v. Naughtem, 414 U.S. 141 (1973). The United States Supreme Court has held that to

warrant habeas relief, the petitioner must show that the instructions as a whole were so infirm as to render the entire trial fundamentally unfair. Estelle v. McGuire, 502 U.S. 62 (1991). Moreover, due process does not require the judge to give jury instructions on lesser-included offenses in non-capital cases. Beck v. Alabama, 447 U.S. 625 (1980).

In the present case the petitioner claims the trial court's failure to instruct the jury that they did not have to unanimously agree that petitioner was not guilty of the principal charge before considering the lesser charge violated precedent established by the Michigan Supreme Court in People v. Handley, 415 Mich. 356 (1982). The court of appeals agreed that the instruction did not comply but concluded that its failure to comply did not amount to plain error. This court agrees.

In Henderson v. Kibbe, 431 U.S. 145 (1977), the Supreme Court recognized that an omitted or incomplete jury instruction is less likely to be prejudicial than a misstatement of the law. Furthermore, the court in held an instruction will not be deemed erroneous unless the instruction or manner of giving it conveys the impression that there must be an acquittal on one charge before consideration of another. See People v. Mays, 407 Mich. 619 (1980).

In the present case the jury instruction did not require the jurors to first determine unanimously that defendant was not guilty of first-degree home invasion before considering the lesser offense. Instead, the trial court's instruction simply implied to the jurors that they could consider both the charged offense and the lesser offense equally. The language claiming to be error here is but a minute portion of an extensive instruction. A fundamental rule when reviewing jury instructions is that those instructions must be considered as a whole. Id. at 212. When reviewing the instructions as a whole, there is nothing on the record in the present case that suggests the instruction led the jury to believe that they were required to find a unanimous

verdict of innocence before proceeding to the lesser offense. In conclusion, the trial court's instruction, although not fully complying with CJI2d 3.11 (5), did not amount to plain error. As a result, Petitioner did not satisfy <u>Strickland's</u> second prong requiring the Petitioner to show that counsel's deficient performance of failing to object to the omission of the instruction was prejudicial to his defense. Petitioner has also failed to establish that there was a reasonable probability that the result would have been different.

### B. SUFFICIENCY OF EVIDENCE CLAIM

The United States Supreme Court held in habeas cases the proper review regarding sufficiency of the evidence supporting a jury verdict shall be examined through the framework of 28 U.S.C. § 2254(d), to ascertain whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979). Because such a claim of insufficiency of the evidence presents a mixed question of law and fact, this court must determine whether the state court's application of the <u>Jackson</u> standard was reasonable. <u>Malculm v. Burt</u>, 276 F. Supp. 2d 664, 686 (E.D. Mich. 2003). It is not for this court to weigh the credibility of the witnesses or reach its own conclusion as to whether the evidence at the trial established guilt beyond a reasonable doubt. <u>Walker v. Russell</u>, 57 F. 3d. 472, 475-476 (6th Cir.1995). The scope of review is exceptionally limited in regards to the sufficiency of evidence claims in a state criminal prosecution. In fact, "a habeas court must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state and defer to that resolution." <u>Terry v. Bock</u>, 208 F. Supp. 2d 780, 794 (E.D. Mich. 2002).

In the present case the petitioner argues that the prosecution did not meet its burden of proving each element of first-degree home invasion beyond a reasonable doubt. The elements of first-degree home invasion are as follows: (1) that the defendant broke and entered into the

9

dwelling; (2) that when the defendant did so, he intended to commit a larceny; and (3) that when the defendant entered, was present in, or was leaving the dwelling, another person was in the dwelling. Mich. Comp. Laws Ann. § 750.110a(2). The relevant element in dispute on review is whether the petitioner had the requisite intent to commit larceny.

The presumption of intent to steal does not arise solely from the proof of breaking and entering. However, intent may reasonably be inferred through circumstantial evidence, including the nature, time, and place of the defendant's acts before and during the attempted breaking and entering. People v. Huges, 27 Mich. App. 221 (1970).

In the present case evidence was introduced that Defendants honked their horn in the victim's driveway three or four times before driving across the street and parking their vehicle out of sight from the road. Defendants then walked to the front door and rang the victim's doorbell several times before proceeding to the back door. A back door was then opened, as was the adjacent pantry door. The victim testified that a locked door leading from the food pantry into the kitchen had scratch marks on it, and that she eventually found the handle of a brass candle snuffer that she normally kept on a table in the sunroom lying on boxes in the food pantry. The victim also testified that she observed defendants exit her home and run around the side of her house back towards the car parked in the woods. Gerald Tater, a neighbor of the victim, saw Defendants' car come from the field and speed through his yard. While the car was fleeing, Tater noticed a light colored coat hanging out of the trunk covering up the rear license plate in attempt to conceal their identity.

Although the above facts are circumstantial evidence and not direct evidence that the Petitioner had the requisite intent to commit a larceny, it is well established that a conviction may rest on circumstantial evidence as well as inferences based upon the evidence. Dell v.

Straub, 194 F.Supp.2d 780, 794 (E.D. Mich. 2002). Therefore, although circumstantial, this evidence is adequate to permit a rational trier of fact to infer that Petitioner possessed the requisite intent to commit a larceny at the time he broke into and entered the dwelling of the victim. In summary, petitioner's Sixth Amendment right to counsel was not violated; therefore, the petitioner's petition for a writ of habeas corpus will be denied.

# **ORDER**

For the reasons stated above, it is hereby **ORDERED** that the petition for writ of habeas corpus is **DENIED.**

Date: August 26, 2010                        s/John Corbett O'Meara
                                                     United States District Judge

I hereby certify that a copy of this Opinion and Order was served upon the parties of record on August 26, 2010, using the ECF system and/or by first-class mail.

                                                       s/William Barkholz
                                                       Case Manager